DONALD R. ZUIDMULDER, District Attorney Brown County
You request my opinion concerning whether the legislature created a crime by invoking a criminal penalty when it enacted sec. 289.41 (3), Stats. (ch. 333, Laws of 1971), which makes stopping payment on a check used to pay for certain repairs to personal *Page 82 
property "prima facie evidence of intent to defraud." Section289.41 (3), Stats., provides:
 "Insofar as the possessory right and lien of the person performing labor and services under this section are released, relinquished and lost by the removal of property upon which a lien has accrued, it is prima facie evidence of intent to defraud if upon the removal of such property, the person removing the property issues any check or other order for the payment of money in payment of the indebtedness secured by the lien, and thereafter stops payment on the check or order. This subsection does not apply when a check is stopped because the product is improperly repaired or improperly serviced and the product has been returned to the person performing the labor or services for proper repair or service."
You further ask whether the theft statute, sec. 943.20, Stats., provides the "operational penalty" for violation of sec. 289.41
(3), Stats., since sec. 943.20 (1) (d), Stats., also contains the phrase "intent to defraud." Section 943.20, Stats., provides in part:
 "Theft. (1) Acts. Whoever does any of the following may be penalized as provided in sub. (3):
"* * *
 "(d) Obtains title to property of another by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. `False representation' includes a promise made with intent not to perform it if it is a part of a false and fraudulent scheme.
"* * *
 "(3) Penalties. Penalties for violation of this section shall be as follows:
 "(a) If the value of the property does not exceed $100, a fine of not more than $200 or imprisonment for not more than 6 months or both. *Page 83 
 "(b) If the value of the property exceeds $100 but not $2,500, a fine of not more than $5,000 or imprisonment for not more than 5 years or both.
 "(c) If the value of the property exceeds $2,500, a fine of not more than $10,000 or imprisonment for not more than 15 years or both." (Emphasis added.)
It is my opinion that in enacting sec. 289.41 (3), Stats., the legislature did not create a crime and invoke a criminal penalty.
What constitutes a crime under the statutes is defined by sec.939.12, Stats.:
 "A crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime."
Under this definition, the first essential ingredient of a crime is that certain conduct must be prohibited by state law. The conduct with which sec. 289.41 (3), concerns itself is the stopping payment of a check given in payment for repairs to personal property. This conduct is not labeled criminal, but merely made evidence of "intent to defraud." No language in this section expressly prohibits this conduct. In fact, such a prohibition would be inconsistent with another section of the statutes. Section 404.403, Stats., in the Uniform Commercial Code, specifically establishes the right of drawers of checks to stop payment on any check. The section provides in part:
 "Customer's right to stop payment; burden of proof of loss. (1) A customer may by order to his bank stop payment of any item payable for his account . . ."
Furthermore, in light of sec. 401.104, Stats., establishing a policy against implicit repeal of any part of the code by subsequent legislation, it is doubtful if sec. 289.41 (3), Stats., should be construed to extinguish the right of drawers to stop payment on certain checks. Section 401.104, Stats., provides:
 "Construction against implicit repeal. This code being a general act intended as a unified coverage of its subject matter, no part of it shall be deemed to be impliedly repealed by *Page 84 
subsequent legislation if such construction can reasonably be avoided."
Section 289.41 (3), Stats., does not, therefore, render certain conduct (i.e., stopping payment on a check or note) "prohibited by state law."
The second essential ingredient of a crime under sec. 939.12, Stats., is that certain conduct must be "punishable by fine or imprisonment or both." Nowhere does sec. 289.41, Stats., make any mention of fine or imprisonment. The statute is absolutely silent on this point. It could appear that either of two other statutes could supply a penalty provision for stopping payment on a check contrary to sec. 289.41 (3), Stats.: sec. 939.61, Stats., entitled "Penalty when none expressed;" or, as you suggest, the theft statute, sec. 943.20, Stats. Nevertheless, upon closer examination, neither statute appears sufficient for this purpose.
Section 939.61, Stats., provides:
 "Penalty when none expressed. Common-law penalties are abolished. Whenever a person is convicted of a crime for which no penalty is expressed, he may be fined not more than $250 or imprisoned not more than one year in county jail."
This section would only appear to apply where certain conduct had already been statutorily designated as criminal, that is prohibited and punishable, but where no particular punishment was specified. For example, sec. 939.61, Stats., would supply the penalty provision for a statute which itself designated certain conduct to be a misdemeanor, but which failed to prescribe the specific punishment. As the Wisconsin Supreme Court said in Stateex rel. Gaynon v. Krueger (1966), 31 Wis.2d 609, 617,143 N.W.2d 437, concerning a statute of this type:
 ". . . When the sales tax was adopted in 1961 the failure to file a return and the filing of a false return for such tax was expressly provided to constitute a misdemeanor but no penalty or place of punishment was stated. Sec. 77.60 (6), Stats. In such cases, sec. 939.61 is applicable by necessary reference . . . ." *Page 85 
Section 939.61 would appear incapable of rendering certain activity punishable in the absence of another statutory provision clearly designating such activity to be a crime.
Similarly, it does not appear that the theft statute, sec.943.20, Stats., can furnish the penalty provision for sec. 289.41
(3), Stats. Section 943.20 (3) prescribes penalties "for violation of this section." Section 289.41 (3) establishes primafacie evidence of "intent to defraud," but mere intent to defraud does not constitute a violation of any section of sec.943.20, Stats. Under sec. 943.20 (1) (d), "intent to defraud" is one element of the crime of theft. However, a successful prosecution for violation of sec. 943.20 (1) (d) would depend upon the establishment of all the other elements of the crime specified in that subsection, including: obtaining title to the property of another, intentional deception with false representations known to be false, and actual fraud. Section289.41 (3), Stats., does not in any way pertain to these elements; evidence of their existence in a given case would have to be independently established. Thus, the mere establishment of "intent to defraud" through operation of sec. 289.41 (3), cannot, by itself, trigger the penalty provisions of sec. 943.20, Stats.
It is apparent from the foregoing analysis, that in enacting sec. 289.41 (3), the legislature did not create a crime. This interpretation of the statute is supported by at least two other factors; the rule of strict construction of penal statutes, and the statute's legislative history.
 "It is a well-known canon of construction that a criminal statute must be strictly construed in favor of the accused . . . ." State v. Wrobel (1964), 24 Wis.2d 270, 275, 128 N.W.2d 629.
One of the underpinnings of this canon is the constitutional void for vagueness doctrine. The Wisconsin Supreme Court recently succinctly stated this doctrine:
 "The underlying principle of certainty in a criminal statute is that a person should not be held criminally responsible for conduct which he could not reasonably understand to be proscribed . . . ." State v. Vlahos
(1971), 50 Wis.2d 609, 617, 184 N.W.2d 817. *Page 86 
See also Jones v. State (1972), 55 Wis.2d 742, 746,200 N.W.2d 587; and State ex rel. Dinneen v. Larson (1939), 231 Wis. 207,217, 284 N.W. 21, reh. den., 231 Wis. 217, 286 N.W. 41. Plainly, sec. 289.41 (3), Stats., does not provide reasonable notice that the conduct it describes could be criminal. The subsection does not contain any express prohibitions, nor any penalty provisions. It should not be construed, therefore, to permit criminal prosecution and conviction.
The legislative history of sec. 289.41 (3), Stats., further indicates that the legislature did not create a crime when it enacted this statute into law. The legislative drafting file shows that the initial draft of the law, 1971 Assembly Bill 545, was introduced by Representative Lewison at the request of the Wisconsin Automotive Trades Association. This draft (LRB-2609) proposed creation of the following statute:
 "943.245 FRAUDULENT USE OF CHECKS TO OBTAIN MERCHANDISE. If any person, with intent not to pay valid charges, stops payment on a check issued as payment for merchandise purchased or repaired and if that merchandise was voluntarily released to him by the seller or repairman on the belief that the check would be paid, the person stopping payment is guilty of a misdemeanor and may be fined not more than $1,000 or imprisoned not more than one year or both."
This statute would have created a crime. It expressly prohibited certain conduct and imposed a penalty. Furthermore, the statute would have appear in the criminal code in ch. 943, which is entitled "Crimes Against Property." It is evident that the legislature was perfectly aware of how to make stopping payment on certain checks a crime if it wished to. As finally enacted into law as sec. 289.41 (3), Stats., however, the statute is radically different from the initial draft of 1971 Assembly Bill 545. The section is not within the criminal code, contains no prohibitions, and imposes no penalties. This metamorphosis evidences a legislative intent to avoid the creation of a new crime. Further support for this interpretation of legislative intent may be derived through comparing sec. 289.41 (3), Stats., with sec. 289.16, Stats. Section 289.16 specifically provides that misappropriation of public improvement funds by contractors constitutes theft and is punishable under sec. 943.20. Quite plainly, if *Page 87 
the legislature had intended to make the mere stopping of payment on a check a crime, it would have similarly expressly referred to an existing criminal statute.
To summarize, based on the statutory definition of a crime, the rule of strict construction of penal statutes, and legislative history, it is my opinion that in enacting sec. 289.41 (3), the legislature did not create a crime and criminal penalties for the acts specified therein. The function of sec. 289.41 (3), through use of the words "prima facie evidence of intent to defraud, " appears to be confined to the prima facie establishment of only one of the elements of the crime of theft defined in sec. 943.20
(1) (d), Stats.
RWW:PM